**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

TRACY HARRIS,              )
                                   )
                Plaintiff,    )
                                   )
            v.               )        1:16CV140
                                   )
NANCY A. BERRYHILL,      )
Acting Commissioner of Social  )
Security,[1]               )
                                   )
                Defendant.    )

## <u>MEMORANDUM OPINION AND RECOMMENDATION</u>
## <u>OF UNITED STATES MAGISTRATE JUDGE</u>

Plaintiff, Tracy Harris, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Supplemental Security Income ("SSI"). (Docket Entry 2.) Defendant has filed the certified administrative record (Docket Entry 11 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 14, 16; <u>see also</u> Docket Entry 15 (Plaintiff's Memorandum); Docket Entry 17 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

# I. PROCEDURAL HISTORY

Plaintiff applied for SSI. (Tr. 208-13.) Upon denial of that application initially (Tr. 92-113, 120, 150-59) and on reconsideration (Tr. 121-43, 163-72), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 173-75). Plaintiff, who proceeded pro se, and a vocational expert ("VE") attended the hearing. (Tr. 26-61.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 8-21.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-5, 7), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] has not engaged in substantial gainful activity since January 20, 2012, the application date.
>
> 2. [Plaintiff] has the following severe impairments: degenerative joint disease, hypertension, mild bipolar disorder and alcohol dependence in remission.
>
> . . .
>
> 3. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> . . .
>
> 4. . . . [Plaintiff] has the residual functional capacity to perform light work . . . except he can never climb ladders, ropes or scaffolds; he can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl; he must avoid concentrated exposure to vibration

and extreme cold and extreme heat; he can perform simple,
routine, repetitive tasks and can occasionally interact
with the general public.

. . .

5.   [Plaintiff] is unable to perform any past relevant
work.

. . .

9.   Considering [Plaintiff's] age, education, work
experience, and residual functional capacity, there are
jobs that exist in significant numbers in the national
economy that [he] can perform.

. . .

10.  [Plaintiff] has not been under a disability, as
defined in the [] Act, since January 20, 2012, the date
the application was filed.

(Tr. 13-20 (bold font and internal parenthetical citations
omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security
Commissioner's denial of social security benefits."  Hines v.
Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope
of [the Court's] review of [such a] decision . . . is extremely
limited."  Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).
Plaintiff has not established entitlement to relief under the
extremely limited review standard.

## A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo."
Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead,

the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the

4

claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id.

---

[2] The Act "comprises two disability benefits programs. The Disability Insurance Benefits Program provides benefits to disabled persons who have contributed to the program while employed. [SSI] provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity

_____

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

('RFC')." <u>Id.</u> at 179.[4]  Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. <u>See id.</u> at 179-80.  However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." <u>Hall</u>, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. <u>Hines</u>, 453 F.3d at 567.[5]

---

[4]  "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." <u>Hines</u>, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." <u>Hall</u>, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (<u>e.g.</u>, pain)." <u>Hines</u>, 453 F.3d at 562-63.

[5]  A claimant thus can establish disability via two paths through the SEP.  The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.  Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. <u>See, e.g.</u>, <u>Hunter</u>, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

## B.  Assignments of Error

Plaintiff contends that the Court should overturn the ALJ's finding of no disability on these grounds:

(1) "[t]he ALJ erred by failing to incorporate into the RFC non-exertional limitations in the ability to stay on task where he first found that [Plaintiff] was moderately impaired in the maintenance of concentration, persistence, or pace ("CPP")" (Docket Entry 15 at 9 (bold font, underlining, and italics omitted));

(2) "[t]he ALJ erred by failing to assess [Plaintiff's] credibility before finding the RFC" (id. at 15 (bold font and underlining omitted)); and

(3) "[t]he ALJ erred when he failed to properly analyze [Plaintiff's] complaints of pain" (id. at 19 (bold font and underlining omitted)).

Defendant disputes Plaintiff's assignments of error, and urges that substantial evidence supports the finding of no disability. (See Docket Entry 17 at 4-18.)

### 1. CPP

In Plaintiff's first assignment of error, he contends that "[t]he ALJ erred by failing to incorporate into the RFC non-exertional limitations in the ability to stay on task where he first found that [Plaintiff] was moderately impaired in the maintenance of [CPP]."  (Docket Entry 15 at 9 (bold font, underlining, and italics omitted).)  More specifically, Plaintiff

8

maintains that "an ALJ does not account for a claimant's limitations in [CPP] by restricting the RFC or the hypothetical question to the [VE] to simple, routine, repetitive tasks ("SRRTs") . . . [because] 'the ability to perform simple tasks differs from the ability to stay on task[,] [and] [o]nly the latter limitation would account for a claimant's limitation in [CPP].'" (Id. at 9-10 (quoting Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015)) (brackets omitted).)  Thus, Plaintiff argues, the ALJ's inclusion in the RFC of a restriction to SRRTs did not, under Mascio, account for Plaintiff's moderate deficit in CPP.  (Id.)  Moreover, according to Plaintiff, "[t]he additional limitation [in the RFC] to 'occasional interactions with the general public'" similarly does not address his "ability to stay on task." (Id. at 10 (citing Patton v. Colvin, 1:15CV616, 2016 WL 3417361, at *3 (M.D.N.C. June 16, 20-16) (unpublished)).)  Plaintiff's arguments fall short.

The United States Court of Appeals for the Fourth Circuit has held that "the ability to perform simple tasks differs from the ability to stay on task" and that "[o]nly the latter limitation would account for a claimant's limitation in [CPP]." Mascio, 780 F.3d at 638.  However, that court also allowed for the possibility that an ALJ could adequately explain why moderate limitation in concentration, persistence, or pace would not result in any limitation in the RFC.  Id.  A neighboring district court had occasion to discuss this very point:

> *Mascio* does not broadly dictate that a claimant's
> moderate impairment in concentration, persistence, or
> pace <u>always</u> translates into a limitation in the RFC.
> Rather, <u>Mascio</u> underscores the ALJ's duty to adequately
> review the evidence and explain the decision . . . . An
> ALJ may account for a claimant's limitation with
> concentration, persistence, or pace by restricting the
> claimant to simple, routine, unskilled work where the
> record supports this conclusion, either through physician
> testimony, medical source statements, consultative
> examinations, or other evidence that is sufficiently
> evident to the reviewing court.

Jones v. Colvin, No. 7:14CV00273, 2015 WL 5056784, at *10-12 (W.D.
Va. Aug. 20, 2015) (Magistrate Judge's Report & Recommendation
adopted by District Judge) (unpublished) (emphasis added). Here,
the ALJ's decision provides a sufficient explanation as to why
restrictions in the RFC to SRRTs and occasional interaction with
the public sufficiently accounted for Plaintiff's moderate
limitation in CPP.

First, the ALJ's rationale at step three makes clear that the
ALJ gave Plaintiff the benefit of the doubt in finding Plaintiff
<u>moderately</u> limited in his ability to maintain CPP, and then
concluded that such a limitation would not prevent Plaintiff from
performing unskilled work:

> With regard to [CPP], [Plaintiff] has moderate
> difficulties. "[CPP]" refers to the ability to sustain
> focused attention sufficiently long enough to permit
> timely completion of tasks commonly found in [a] work
> setting. The objective medical evidence reveals
> [Plaintiff] has moderate limitations in these areas.
> <u>However, despite this degree of limitation, [Plaintiff]</u>
> <u>is able to concentrate and attend to task[s]</u>
> <u>sufficient[ly] enough for unskilled work.</u> A consultative
> examiner described *mild* concentration problems,
> suggesting, however[,] that [Plaintiff] was able to

> understand, retain and follow instructions; he was able
> to sustain attention to perform repetitive tasks; he had
> the ability to relate to fellow workers and supervisors;
> and he could tolerate stress and pressure associated with
> work.

(Tr. 14 (underlining added, italics in original) (internal citation omitted).)[6] Thus, the ALJ's analysis provides "an accurate and logical bridge," Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000), between the finding of moderate deficit in CPP and the mental RFC determination, by concluding, based on opinion evidence, that Plaintiff's CPP deficit fell, at most, toward the mild end of the moderate designation. See Burger v. Colvin, No. 7:14CV00190, 2015 WL 5347065, at *14 (W.D. Va. Sept. 14, 2015) (unpublished) (concluding ALJ explained why limitation to tasks involving short, simple instructions sufficiently accounted for the claimant's moderate limitation in CPP where ALJ discussed pertinent record evidence, and noting that "ALJ appeared to just give [the claimant]

---

[6] Plaintiff argues that the ALJ found only that Plaintiff could concentrate and attend to tasks sufficiently enough for unskilled work (Docket Entry 15 at 11; see also Tr. 14), that "a limitation to [SRRTs] is a more narrow limitation than a limitation to unskilled work" (id. (citing Wall v. Astrue, No. 1:11CV318, 2013 WL 954361, at *4 (W.D.N.C. Feb. 22, 2013) (unpublished))), and that "Mascio teaches that the attribution of an ability to perform only unskilled work does not account for moderate limitations in [CPP]" (id. (citing Mascio, 780 F.3d at 638)). However, Plaintiff's argument glosses over the fact that the ALJ gave "great weight" (Tr. 18) to the opinion of consultative examiner Dr. Ronald D. Franklin that Plaintiff "[wa]s . . . able to sustain attention to perform simple repetitive tasks" (Tr. 408 (emphasis added)). Thus, despite the ALJ's reference to "unskilled work" at step three (Tr. 14), he adequately explained his rationale for finding that Plaintiff could concentrate sufficiently enough to complete SRRTs.

the benefit of the doubt regarding [the moderate] limitation" in CPP).[7]

Second, the ALJ noted that Plaintiff remained able to engage in various daily activities, such as playing video games, playing guitar and singing in a band, fishing, watching movies, and caring for an elderly neighbor, all of which require the ability to focus and concentrate to some degree. (See Tr. 16, 17, 18; see also Tr. 19 ("In this case [Plaintiff's] relatively normal activities of daily living and other evidence is revealing of an ability on the part of [Plaintiff] to do essentially that which [he] chooses to do (lives alone, prepares his own meals, drives a car).").)

Third, the ALJ also discussed and weighed the opinion evidence as it related to Plaintiff's ability to function mentally. (See Tr. 18-19.) The ALJ again noted the opinion of consultative

_____

[7] Plaintiff urges that a conflict exists between the ALJ's finding that Plaintiff suffered from "severe" bipolar disorder (Tr. 13), and possessed a "moderate" deficit in CPP (Tr. 14), and the ALJ's adoption of Dr. Franklin's opinion that Plaintiff's concentration problems qualified as "mild" (Tr. 408). (See Docket Entry 15 at 12-13.) Plaintiff deems "speculative at best" the notion that the ALJ, by italicizing the word "mild," sought to indicate that Plaintiff's "concentration problems were trivial or non-severe or did not translate into any limitations in the RFC." (Id. at 13.) Although the ALJ found Plaintiff's bipolar disorder qualified as a "severe" impairment at step two (Tr. 13), the applicable authority makes clear that, at this step, Plaintiff must show only that his bipolar disorder constitutes "a slight abnormality . . . that has no more than a minimal effect on the ability to do basic work activities," Social Security Ruling 96-3p, Policy Interpretation Ruling Titles II and XVI: Considering Allegations of Pain and Other Symptoms in Determining Whether a Medically Determinable Impairment is Severe, 1996 WL 374181, at *1 (July 2, 1996). In addition, the ALJ's characterization of Plaintiff's bipolar disorder as "mild" at step two (Tr. 13) further confirms that the threshold of the severity finding at step two equates to a mild level of impairment. Moreover, the Court should not find the ALJ's rationale for finding, at most, a moderate limitation in CPP "speculative." As stated above, by emphasizing (and adopting) Dr. Franklin's opinion that Plaintiff's concentration problems qualified as mild, the ALJ signaled that he simply gave Plaintiff the benefit of the doubt in adopting a moderate limitation in CPP.

psychological examiner Dr. Ronald D. Franklin that Plaintiff suffered from <u>mild</u> concentration problems, and gave "great weight" to Dr. Franklin's opinions that Plaintiff could "understand, retain and follow instructions; . . . <u>sustain attention</u> to perform repetitive tasks; . . . relate to fellow workers and supervisors; and . . . tolerate stress and pressure associated with work." (Tr. 18 (internal citation omitted) (emphasis added); <u>see also</u> Tr. 408.)

Plaintiff takes issue with the ALJ's reliance on Dr. Franklin's opinions in two respects. First, Plaintiff contends that, "even where an ALJ 'adopted' a consultative examiner's report finding that a claimant could <u>maintain attention</u> to complete SRRTs, the ALJ failed to address the ability to stay 'on task,' because the RFC determination is a matter reserved to the ALJ, not to consultative examiners." (Docket Entry 15 at 11-12 (emphasis added) (citing <u>Salmon v. Colvin</u>, No. 1:12CV1209, 2015 WL 1526020, at *3 (M.D.N.C. Apr. 2, 2015) (unpublished)).)

Plaintiff misreads <u>Salmon</u>. In that case, the Court found remand necessary, not because "the RFC determination is a matter reserved to the ALJ," but because the ALJ adopted the state agency psychological consultant's opinions, yet failed to include in the RFC the consultant's specific language that the plaintiff could <u>maintain attention</u> to complete SRRTs. <u>Salmon</u>, 2015 WL 1526020, at *3. In contrast, the ALJ here, in formulating the RFC, <u>expressly</u> gave "great weight" (Tr. 18) to Dr. Franklin's opinion that

Plaintiff "[wa]s . . . able to <u>sustain attention</u> to perform simple repetitive tasks" (Tr. 408 (emphasis added)).  Thus, unlike in <u>Salmon</u>, the Court can determine the ALJ's basis for concluding that, despite moderate deficit in CPP, Plaintiff remained able to perform SRRTs.

Second, according to Plaintiff, the ALJ failed to account in the RFC for Dr. Franklin's opinions that Plaintiff "'has difficulty adapting to change'" (Docket Entry 15 at 12 (quoting Tr. 408)), and may have mild brain damage from a motor vehicle accident in 1993 (<u>id.</u> at 14 (citing Tr. 408)), Dr. Franklin's observation that Plaintiff's mood "was 'hypomanic and his affect angry'" (<u>id.</u> at 13 (quoting Tr. 404)),[8] Plaintiff's status as unmarried and childless (as could "reflect his poor social skills and alienation") (<u>id.</u> at 14 (citing Tr. 405)), Plaintiff's subjective reports to Dr. Franklin of delusions and homicidal ideation (<u>id.</u> at 14 (citing Tr. 406)), and Plaintiff's subjective inability to correctly state his own birth year (<u>id.</u> (citing Tr. 407)).[9]

As an initial matter, an ALJ need not discuss every finding in each piece of evidence in making an RFC determination.  <u>See</u> <u>Reid v. Commissioner of Soc. Sec.</u>, 769 F.3d 861, 865 (4th Cir. 2014)

---

[8] The ALJ did note Dr. Franklin's observations that Plaintiff possessed a "booming voice" and an "intimidating" appearance.  (Tr. 18; <u>see also</u> Tr. 404.)

[9] Despite Plaintiff's apparent inability to correctly remember his birth year at that consultative examination, at the hearing before the ALJ, Plaintiff correctly recalled, without any prompting, the exact date of his motor vehicle accident in 1993.  (<u>See</u> Tr. 42.)

(citing <u>Dyer v. Barnhart</u>, 395 F.3d 1206, 1211 (11th Cir. 2005)).
More significantly, however, Plaintiff has not shown how the RFC,
as formulated by the ALJ, fails to accommodate the above-described
opinions, observations, and facts.

With regards to Plaintiff's ability to adapt, Dr. Franklin did
not quantify the extent of Plaintiff's "difficulty adapting to
change" (Tr. 408) and, thus, Plaintiff has not shown how the ALJ's
restriction to <u>routine</u>, and <u>repetitive</u> tasks would inadequately
address Plaintiff's problems with adaptation to change. Similarly,
despite Dr. Franklin's estimation that Plaintiff "<u>may</u> have <u>mild</u>
brain damage," Dr. Franklin also opined that Plaintiff possessed
"[a]verage" intelligence. (Tr. 408 (emphasis added).) Plaintiff
fails to demonstrate how the ALJ's restriction to <u>simple</u> tasks does
not accommodate an individual with average intelligence.

With regard to Plaintiff's social skills, despite Dr.
Franklin's observation of Plaintiff's hypomanic mood and angry
affect (<u>see</u> Tr. 404) and Plaintiff's status as unmarried and
childless (<u>see</u> Tr. 405), Dr. Franklin nevertheless determined that
Plaintiff remained able to relate to co-workers and supervisors
(<u>see</u> Tr. 408). Thus, Plaintiff has not demonstrated that the ALJ's
restriction to only occasional interaction with the public
insufficiently captures Plaintiff's limitations with social
interaction.

Furthermore, the ALJ labored under no obligation to incorporate Plaintiff's subjective complaints of delusions, homicidal ideation, and memory loss, where the ALJ found Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms only partially credible. (Tr. 17.) As detailed in the subsequent subsection, the ALJ supported his analysis of Plaintiff's subjective complaints with substantial evidence.

Under these circumstances, the ALJ adequately explained why a limitation to SRRTs and occasional interaction with the public sufficiently accounted for Plaintiff's moderate limitation in CPP. See Hutton v. Colvin, No. 2:14-CV-63, 2015 WL 3757204, at *3 (N.D.W. Va. June 16, 2015) (unpublished) (finding reliance on Mascio "misplaced," because ALJ "gave abundant explanation" for why unskilled work adequately accounted for the claimant's moderate limitation in CPP, by highlighting the claimant's daily activities and treating physicians's opinions).

In sum, the ALJ complied with Mascio and supported his RFC determination with substantial evidence.

### 2. Symptom/Credibility Evaluation

In Plaintiff's second and third issues on review, he challenges the ALJ's evaluation of his subjective complaints of

symptoms in several respects. (See Docket Entry 15 at 15-21.)[10]
More specifically, Plaintiff asserts that the ALJ (1) "fail[ed] to
assess [Plaintiff's] credibility before finding the RFC" in
violation of Mascio, 780 F.3d at 639 (Docket Entry 15 at 15 (bold
font and underlining omitted) (citing Tr. 17)); (2) "failed to
properly analyze [Plaintiff's] complaints of pain" under the two-
step procedure set forth in Craig, 76 F.3d at 594 (Docket Entry 15
at 19); and (3) "grossly misrepresent[ed] the contents of
[Plaintiff's mental health] record[s]" (id. at 17 (citing Tr. 18)).
Plaintiff's arguments fail as a matter of law.

In Mascio, the court decried the ALJ's reliance on
"boilerplate" language at part two of the credibility inquiry that
"'the claimant's statements concerning the intensity, persistence
and limiting effects of [his] symptoms are not credible to the
extent they are inconsistent with the above [RFC] assessment,'"
Mascio, 780 F.3d at 639. The court noted that this language "'gets
things backwards' by implying 'that ability to work is determined
first and is then used to determine the claimant's credibility.'"
Id. (quoting Bjornson v. Astrue, 671 F.3d 640, 645 (7th Cir.
2012)). However, the court concluded that the ALJ's use of such
language would nevertheless constitute harmless error if the ALJ
had "properly analyzed credibility elsewhere." Id.

_____

[10] Because both Plaintiff's second and third issues on review address alleged
deficiencies in the ALJ's symptom evaluation, this Recommendation discusses them
together.

Here, the ALJ's decision (which predates the issuance of Mascio by over six months) contains the boilerplate language found improper by Mascio. (See Tr. 17 ("It is for these reasons that I find [Plaintiff's] statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the [RFC] assessment for the reasons explained below.") (emphasis added).)[11] However, the ALJ's use of that language remains harmless error, because, for the reasons that follow, the ALJ otherwise supported his credibility analysis with substantial evidence. See Mascio, 780 F.3d at 639; see also Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result").

Social Security Ruling 96-7p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements ("SSR 96-7p"), 1996 WL 374186 (July 2, 1996), as applied by the Fourth Circuit in Craig, 76 F.3d at 594-95, provides a two-part test for evaluating a claimant's statements about symptoms. "First, there

_____

[11] Defendant noted that, after using the verbiage criticized in Mascio, the ALJ added the phrase "'for the reasons explained below.'" (Docket Entry 17 at 12 (quoting Tr. 17).) However, Defendant does not expressly take the position that this additional language renders the ALJ's phrasing of his part two finding permissible under Mascio. (See id.)

must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 594 (quoting 20 C.F.R. § 404.1529(b)). Upon satisfaction of part one by the claimant, the analysis proceeds to part two, which requires an assessment of the intensity and persistence of the claimant's symptoms, as well as the extent to which they affect his or her ability to work. Id. at 595. In making that determination, the ALJ:

> must take into account not only the claimant's statements about her pain, but also all the available evidence, including the claimant's medical history, medical signs, and laboratory findings, any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.), and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Id. (internal citations and quotation marks omitted).[12]

---

[12] Effective March 28, 2016, see Social Security Ruling 16-3p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2016 WL 1237954 (Mar. 24, 2016) (correcting effective date of original Ruling), the Social Security Administration superceded SSR 96-7p with Social Security Ruling 16-3p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2016 WL 1119029, at *1 (Mar. 16, 2016). The new ruling "eliminat[es] the use of the term 'credibility' from . . . sub-regulatory policy, as [the] regulations do not use this term." Id. The ruling "clarif[ies] that subjective symptom evaluation is not an examination of the individual's character," id., and "offer[s] additional guidance to [ALJs] on regulatory implementation problems that have been identified since [the publishing of] SSR 96-7p," id. at *1 n.1. The ALJ's decision in this case predates the effective date of SSR 16-3p (see Tr. 21), and, because SSR 16-3p changes existing Social Security Administration policy regarding subjective symptom evaluation, that Ruling does not apply retroactively, see Bagliere v. Colvin, No. 1:16CV109, 2017 WL 318834, at *4-8 (M.D.N.C. Jan. 23, 2017) (Auld,
(continued...)

Plaintiff faults the ALJ for not making an express finding at part one of the credibility inquiry. (See Docket Entry 15 at 19-21.) Plaintiff relies on the following passage in Craig as support for his argument:

> "[T]he ALJ did not expressly consider the threshold question of whether [the plaintiff] had demonstrated by objective medical evidence an impairment capable of causing the degree and type of pain she alleges. Instead, the ALJ proceeded directly to considering the credibility of her subjective allegations of pain. Accordingly, we remand to the ALJ to determine whether [the plaintiff] has an objectively identifiable medical impairment that could reasonably cause the pain of which she complains."

(Id. at 20 (quoting Craig, 76 F.3d at 596) (internal citation omitted).) Plaintiff points out that, "[w]hile the ALJ states that the pain symptoms seem legitimate, he does not state whether there is objective medical evidence showing a medical impairment that could reasonably be expected to produce the pain or other symptoms alleged." (Id.) Thus, Plaintiff contends that the ALJ here "did precisely what was done in Craig, and the case should be vacated and remanded for the same reason." (Id.) Although Plaintiff correctly argues that the ALJ failed to make an express finding at part one of the Craig analysis (see Tr. 15-19), the ALJ's omission

[12] (...continued)
M.J.), recommendation adopted, slip op. (M.D.N.C. Feb. 23, 2017) (Eagles, J.); see also Hose v. Colvin, No. 1:15CV00662, 2016 WL 1627632, at *5 n.6 (M.D.N.C. Apr. 22, 2016) (unpublished) (Auld, M.J.), recommendation adopted, slip op. (M.D.N.C. May 10, 2016) (Biggs, J.).

amounts to harmless error under the circumstances of this case.[13]

As recognized by a neighboring district court, a "serious split" exists among courts within the Fourth Circuit regarding whether an ALJ's failure to make an express finding at part one of the credibility analysis requires remand. Davis v. Astrue, No. 2:06cv94, 2008 WL 696920, at *19 (N.D.W. Va. Mar. 13, 2008) (unpublished) (collecting cases). Indeed, several district courts within the Fourth Circuit have interpreted Craig, just as Plaintiff does here, to mandate remand where an ALJ fails to make an explicit part one finding. See, e.g., Hargrove v. Astrue, No. 4:07-CV-123-FL, 2009 WL 863340, at *3 (E.D.N.C. Mar. 30, 2009) (unpublished) ("The Craig court's requirement that an ALJ expressly consider the threshold question could not be more direct, however, and this court cannot ignore the clear edict of the Court of Appeals in Craig." (internal quotation marks omitted)); Clowney v. Astrue, Civ. No. 8:07-856-CMC-BHH, 2008 WL 2557445, at *5 (D.S.C. June 20, 2008) (unpublished) ("Most critically, the ALJ did not consider the threshold inquiry whether or not the plaintiff's impairments could reasonably be expected to create the symptoms alleged. . . . This error alone justifies remand."); see also Davis v. Astrue, No. 2:06cv94, 2008 WL 696920, at *19 (N.D.W. Va. Mar. 13, 2008)

---

[13] Defendant insists that "the ALJ underwent the two-step credibility-determination process, finding that Plaintiff's impairments could reasonably be expected to produce the alleged symptoms," but fails to point the Court to where such language appears in the ALJ's decision. (Docket Entry 17 at 15.) In fact, the ALJ made no such finding in his decision. (See Tr. 15-19.)

(unpublished) (rejecting the defendant's argument that ALJ's in-depth analysis at part two implied that ALJ must have found for the plaintiff at part one, because Craig "imposes on the ALJ a duty to expressly state whether the objective evidence shows an impairment that could cause the pain claimed"); Gavigan v. Barnhart, 261 F. Supp. 2d 334, 340 (D. Md. 2003) (relying on Craig and holding that "remand is appropriate so that the ALJ can make explicit findings at Step One with regard to each of [the] plaintiff's impairments"); Hill v. Commissioner of Soc. Sec., 49 F. Supp. 2d 865, 870 (S.D.W. Va. 1999) (remanding case based on Craig because ALJ failed to expressly rule on first part of test, despite the defendant's arguments that ALJ implicitly considered part one and that favorable determination at part one would still result in denial of benefits).

In contrast, the Fourth Circuit (albeit in unpublished fashion) and several district courts within the Fourth Circuit, including a member of this Court, have found that an ALJ's failure to make an express part one finding does not constitute per se reversible error. See Nelson v. Apfel, No. 98-1234, 166 F.3d 333 (table), 1998 WL 879588, at *3 (4th Cir. Aug. 3, 1998) (unpublished) (refusing to remand despite ALJ's failure to address Craig's threshold question, where ALJ implicitly addressed question by "consider[ing] all the impairments [the plaintiff] claimed to have and, if relevant, the pain allegedly associated with the

impairment"); <u>Barnes ex rel. T.J. v. Colvin</u>, No. 4:12-CV-254-D, 2014 WL 126039, at *5 (E.D.N.C. Jan. 13, 2014) (unpublished) ("The lack of an express finding at *Craig*'s first step, however, does not constitute reversible error if the ALJ cites substantial evidence to support his overall finding on the claimant's subjective statements about his symptoms" (internal quotation marks and ellipses omitted)); <u>Basu-Dugan v. Astrue</u>, No. 1:06CV00007, 2008 WL 3413296, at *3 (M.D.N.C. Aug. 8, 2008) (unpublished) (Schroeder, J., adopting recommendation of Eliason, M.J.) ("[I]t is evident from the ALJ's opinion that he agrees with [the] [p]laintiff that her claimed impairments could reasonably be expected to produce the pain she alleges.  Otherwise, there would be no reason for the ALJ to proceed to a lengthy step two *Craig* analysis."); <u>Ketcher v. Apfel</u>, 68 F. Supp. 2d 629, 651 (D. Md. 1999) ("Although the ALJ did not specifically state that the claimant's alleged pain could result from [his] medically determined impairments, it is clear that the ALJ made this determination since he noted that the impairments were 'severe' and affected [the claimant's] functional capacity[,] [and] the ALJ correctly applied step two of the analysis.").

The cases cited above holding that an ALJ's failure to make an express finding at part one of the <u>Craig</u> analysis does not constitute per se reversible error more accurately reflect the Court's limited role on direct review, <u>see Frady</u>, 646 F.2d at 144

(noting that "the scope of [the Court's] review of [the ALJ's decision] . . . is extremely limited"), as well as the concept of harmless error recognized by the Fourth Circuit, see Camp v. Massanari, 22 F. App'x 311, 311 (4th Cir. 2001) (applying harmless error standard in Social Security benefits review context and refusing to remand absent showing of prejudice). The ALJ's subsequent analysis of Plaintiff's credibility at part two implies that the ALJ found in favor of Plaintiff at part one, i.e., he found that Plaintiff had medically determinable impairments that could reasonably be expected to produce the symptoms alleged. Moreover, at step two of the SEP, the ALJ found that Plaintiff had four severe impairments – degenerative joint disease, hypertension, mild bipolar disorder, and alcohol dependence in remission – (see Tr. 13), and Plaintiff does not contend that he has other impairments that the ALJ failed to analyze (see Docket Entry 15 at 19-21). In other words, "the ALJ considered all of the impairments [Plaintiff] claimed to have and, if relevant, the pain allegedly associated with the impairment," Nelson, 1998 WL 879588, at *3; as a result, Plaintiff has not shown that the ALJ's failure to make an express part one finding caused him any prejudice, see generally Camp, 22 F. App'x at 311.

Lastly, Plaintiff asserts that the ALJ erred in two respects in analyzing the intensity, persistence, and limiting effects of Plaintiff's symptoms at part two of the Craig analysis. (See

Docket Entry 15 at 17-19, 21.)  First, Plaintiff claims that the ALJ "grossly misrepresented" Plaintiff's mental health treatment (id. at 17), by finding that:

> Progress notes fail to corroborate [Plaintiff's] testimony to significant mental health limitations. Mental status examinations were regularly within normal limits. [Plaintiff] routinely presented with good hygiene, normal speech, and appropriate affect.

(Tr. 18 (internal citation omitted) (emphasis added).)  In support of that argument, Plaintiff provides multiple citations to mental health treatment records which he contends "display[], with some brief periods of remission, . . . disabling mental limitations in [CPP] such that working any full time job would be impossible." (Docket Entry 15 at 17 (citing Tr. 302-03, 304, 317, 340, 348, 350, 440, 442, 443, 446, 452, 454, 456, 458, 460, 462).)  Plaintiff's argument misses the mark.

The record reflects that, between Plaintiff's application date in January 2012 and the ALJ's decision in September 2014, Plaintiff visited Daymark Recovery Services on 16 occasions where clinicians performed mental status examinations, and he also attended one consultative mental examination in June 2012.  (See Tr. 404-09, 424-67.)  Of those 17 mental status examinations, clinicians found Plaintiff's affect "appropriate" on 13 occasions (see Tr. 424, 426, 428, 444, 446, 448, 450, 452, 454, 456, 458, 460, 462) and thus the ALJ did not "grossly misrepresent" (Docket

Entry 15 at 17) the record by finding that Plaintiff "routinely presented with . . . appropriate affect" (Tr. 18).

With regard to Plaintiff's speech, clinicians found his speech "normal" on seven occasions (see Tr. 404, 424, 426, 428, 444, 446, 448), and, on seven other occasions, described his speech as only "slightly rapid at times" (Tr. 450, 452, 454, 456, 458, 460, 462 (emphasis added)). Accordingly, the ALJ did not err by describing Plaintiff's speech as "routinely" normal. (Tr. 18.)

Similarly, concerning Plaintiff's hygiene, on seven occasions, clinicians rated Plaintiff as "casually" (Tr. 404, 424, 426, 444), "fairly" (Tr. 442), or "well" (Tr. 443) groomed. On seven other occasions, mental health providers described Plaintiff as "fairly groomed" and noted only that his "clothes were slightly dirty." (Tr. 452, 545, 456, 458, 460, 462 (emphasis added).) Although the ALJ might better have described Plaintiff's usual hygiene as "adequate" rather than "good" (Tr. 18), Plaintiff has not shown how a finding of "adequate" hygiene would have impacted Plaintiff's ability to maintain CPP, or the ultimate RFC in this case. (See Docket Entry 15 at 17-19.) Under such circumstances, the ALJ's finding that Plaintiff "routinely presented with good hygiene" (Tr. 18 (emphasis added)) does not constitute reversible error.

Second, Plaintiff posits that "[t]he second step of the Craig schema requires a comprehensive assessment of the record before the ALJ may adjudge the intensity and persistence of [Plaintiff's]

pain, and the extent to which it affects his ability to work." (Docket Entry 15 at 21 (citing <u>Craig</u>, 76 F.3d at 595) (emphasis added).)  According to Plaintiff, "between [transcript] page 16, paragraph 4, and the credibility assessment at [transcript] page 17, paragraph 4, there are no medical assessments" and thus the ALJ's analysis "is unsupported by substantial evidence.  (<u>Id.</u>)

Plaintiff's argument ignores the fact that the ALJ clearly stated that he found Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [we]re not credible to the extent they are inconsistent with the [RFC] assessment <u>for the reasons explained below</u>" (Tr. 17 (emphasis added).)  The ALJ then stated that "[t]he objective evidence provides some support to [Plaintiff's] allegations . . ., [but] does not support the elevated level of impairment alleged" (<u>id.</u>), and proceeded to review the medical evidence (<u>see</u> Tr. 17-19).

In short, Plaintiff's claim that the ALJ improperly evaluated his symptoms fails as a matter of law.

### III.  CONCLUSION

Plaintiff has not established an error warranting reversal or remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 14) be denied, that

Defendant's Motion for Judgment on the Pleadings (Docket Entry 16)

be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld

**L. Patrick Auld**
**United States Magistrate Judge**

May 4, 2017